**Justin Daren BUXTON, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 01-15-00857-CR**

Court of Appeals of Texas, Houston (1st Dist.).

Opinion on rehearing issued July 6, 2017

Rehearing Overruled July 26, 2017

670

Mandy Miller, 2910 Commercial Ctr. Blvd, Ste. 103-201, Katy, TX 77494, for Appellant.

Kim Ogg, District Attorney–Harris County, 1201 Franklin, Suite 600, Houston, TX 77002, Molly Wurzer, Assistant District Attorney, Harris County, Texas, 1201 Franklin, Suite 600, Houston, TX 77002, for Appellee.

Panel consists of Justices Keyes, Higley, and Lloyd.

## OPINION ON REHEARING

Evelyn V. Keyes, Justice

Appellant, Justin Daren Buxton, moved for rehearing and en banc reconsideration of our January 19, 2017 opinion in this case. We deny the motion for rehearing, withdraw our opinion and judgment dated January 19, 2017, and issue this opinion and judgment in their stead. The disposition remains unchanged.

A jury convicted appellant of the first-degree felony offense of continuous sexual abuse of a child and assessed his punishment at confinement for life without parole.[1] In four issues, appellant contends: (1) the trial court erred in failing to quash the indictment, which failed to allege specifically how appellant committed aggravated sexual assault of a child and failed to allege the requisite mens rea; (2) the trial court erroneously admitted evidence that appellant committed uncharged acts of sexual abuse against the complainant and the complainant's sister, which violated his due process rights; (3) the admission of extraneous uncharged acts of sexual abuse against the complainant and her sister violated Rule of Evidence 403; and (4) the State failed to present sufficient evidence that multiple instances of abuse occurred over thirty or more days, as required to convict a person of continuous sexual abuse of a child.

We affirm.

## Background

K.T. dated appellant for several years. She has four children: R.T., C.T., who is the complainant in this case, J.T., and D.B. Her daughters, R.T., C.T., and J.T., all have different fathers, and appellant is the father of D.B. K.T. lived with her own father during the time that she was dating appellant, and her daughters would spend the night with her or with appellant, who lived with his mother, his other children, and his nephew. Occasionally, K.T. spent the night at appellant's house with her children, but her daughters would also frequently spend the night at appellant's house without her being present.

At one point, K.T. and appellant started having problems in their relationship due to appellant's speaking with other women. K.T. decided to look at appellant's laptop, and, when she did, she found nude pictures of R.T. and C.T. K.T. did not call the police, but she discussed the pictures with one of her neighbors, who did call the police. The police officers spoke with R.T. and C.T. about the pictures and asked if anyone was touching them inappropriately, and both girls responded "no." K.T. did not show the officers the pictures because she believed appellant had deleted them. K.T. continued to let her daughters spend the night at appellant's house without her being present after the incident with the pictures. K.T. acknowledged that she had pleaded guilty to failure to report child abuse of C.T. and that she was currently on deferred adjudication for interfering with child custody.

In 2013, C.T., who was ten years old, began living with her biological father, B.S., his wife, C.S., and their children. B.S. had not seen C.T. for about five years before she started living with his family. C.T. would stay with K.T. and appellant every other weekend. B.S. noticed that, after she would return from visiting K.T. and appellant, C.T. would be angry and distant, and she would have an attitude with B.S. and C.S. This behavior would

1. *See* Tex. Penal Code Ann. § 21.02 (West Supp. 2016).

cease within twenty-four hours of her being back at B.S.'s house.

One day, C.T. returned from staying with K.T. and appellant, and she was "distant" and "snappy" at the dinner table. B.S. told C.T. that he was tired of her attitude, and he asked her if something was going on. C.T. became very quiet and was unable to respond. C.S. suggested that if C.T. could not speak about what was bothering her, she perhaps could write it down, and C.T. did so. C.T.'s note stated:

> [Appellant] made me touch his no-no. He touched me. He made me touch him. He made me suck on his. He did it to me. About—it stopped right before I started to see my dad again. He had pictures of me on his computer.

B.S. contacted the police and then took C.T. to the Children's Assessment Center.

Lisa Holcomb conducted C.T.'s forensic interview at the Children's Assessment Center. During the interview, C.T. disclosed that appellant had sexually abused her. C.T. described the abuse more specifically than she had in her note to B.S. C.T. also disclosed that she had witnessed appellant abusing R.T., her older half-sister, that appellant had taken pictures and videos of C.T. and R.T. together, and that appellant had required the girls to "sexually act on each other."

Dr. Marcella Donaruma conducted a medical examination of C.T. at the Children's Assessment Center. C.T. told Dr. Donaruma that her "stepdad was hurting [her]," and when Dr. Donaruma asked what C.T.'s stepfather did to hurt her, C.T. responded that he "would touch [her] inappropriately." C.T. clarified that appellant forced her to participate in oral, vaginal, and anal intercourse. Dr. Donaruma asked C.T. how many times did this happen, and she responded, "It happened a lot." C.T. told her, "Well, it's happened since I was five, all the way till now, when I was ten."

C.T. told Dr. Donaruma that the last time anything had happened was over spring break, when appellant made C.T. take pictures of R.T. and made her take "inappropriate pictures with [R.T.]." Dr. Donaruma did not find any injuries on C.T. during her genital examination, which was expected given the length of time since the last instance of abuse.

In October 2013, the State indicted appellant for the offense of aggravated sexual assault of C.T., a child under the age of fourteen. On September 18, 2015, ten days before trial, the State indicted appellant for the offense of continuous sexual abuse of a child. The indictment alleged:

> The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, **JUSTIN DAREN BUXTON**, hereafter styled the Defendant, heretofore on or about **October 15, 2007 and continuing through October 15, 2012**, did then and there unlawfully, during a period of time thirty or more days in duration, commit at least two acts of sexual abuse against a child younger than fourteen years of age, including an act constituting the offense of aggravated sexual assault of a child, committed against [C.T.] on or about October 15, 2007, and an act constituting the offense of aggravated sexual assault of a child, committed against [C.T.] on or about October 15, 2012, and the Defendant was at least seventeen years of age at the time of the commission of each of those acts.

Appellant moved to quash the indictment for continuous sexual abuse of a child, arguing that it failed to allege all essential acts necessary to constitute an offense of continuous sexual abuse, that it was "so vague and indefinite" that a judgment based on the indictment could not be used to bar a subsequent prosecution of

the same offense, that it failed to give proper notice of the offense in violation of due process, and that it failed to specify the manner and means of commission of the offense of aggravated sexual assault of a child. The trial court denied the motion to quash.

Appellant also filed a pretrial motion requesting a hearing on the admissibility of any extraneous sexual offenses committed against R.T. pursuant to Code of Criminal Procedure article 38.37, section 2. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (West Supp. 2016) (providing that, notwithstanding Rule 404, evidence that defendant has committed separate sexual offense against child other than complainant in charged case may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant"). At a pretrial hearing, the State presented the testimony of R.T. and Jonna Hitchcock, R.T.'s child advocate. Hitchcock testified that in April 2014, R.T. disclosed to her that she had been sexually abused by appellant. R.T. told Hitchcock that the abuse began when she was five or six and happened "every night" that she was at appellant's house.

R.T., who was fourteen at the time, testified at the hearing that appellant would touch her inappropriately. When asked by the prosecutor to describe a time that she "remember[ed] best that he did something inappropriate," R.T. testified that appellant made her have vaginal intercourse when she was eleven or twelve. She testified that she was six or seven the first time appellant touched her vagina, and when she was older, appellant made her engage in oral and vaginal intercourse. On cross-examination at this hearing, R.T. agreed that she first had a forensic interview with Lisa Holcomb in September

2013, and R.T. did not tell Holcomb that appellant had touched her inappropriately. At her second forensic interview, which occurred after she made a disclosure of sexual abuse to Hitchcock, R.T. told Holcomb that she had been abused. The trial court ruled that the testimony concerning appellant's actions against R.T. was "adequate to support a finding by the jury that [appellant] committed the separate offense [against R.T.] beyond a reasonable doubt" and was therefore admissible pursuant to Code of Criminal Procedure article 38.37, section 2. The trial court also ruled that the prejudicial effect of this evidence did not substantially outweigh its probative value and therefore the evidence did not violate Rule of Evidence 403.

At trial, C.T. testified that she was six or seven the first time appellant did something inappropriate to her. She stated that appellant drove an eighteen-wheeler truck, and she would occasionally go on trips with him. On one occasion, appellant told C.T. to take her clothes off and use a wipe to clean her vaginal area. C.T. laid down in the sleeping area of the truck's cab, and appellant made her touch his penis. Appellant rubbed his penis on C.T.'s vagina and then cleaned her off, and she put her clothes back on. Appellant told C.T. that he would hurt her if she told anyone what had happened.

On a later occasion, C.T. was spending the night at appellant's house while K.T. was not present. C.T. was in appellant's bedroom, and appellant made her take off her clothes, touch his penis, and sit on him, with his penis contacting her vagina. The prosecutor asked C.T. how often this behavior occurred, and C.T. responded, "I would say sometimes it would be every night. Sometimes it would be every other night. Sometimes it would be kind of spaced out, like once a week or so." The

prosecutor and C.T. had the following exchange:

[The State]: That's starting from—you said from the time you were maybe five or six, right?

[C.T.]: Yes, ma'am.

[The State]: And when was the last time that it happened? How old were you?

[C.T.]: Well, last ·time it happened, it wasn't physical contact. He took pictures of me.

[The State]: Okay. Do you remember how old you were the last time that he did anything physical to you?

[C.T.]: Yes, ma'am.

[The State]: How old were you?

[C.T.]: 10.

[The State]: Do you remember the last time he did anything physical to you?

[C.T.]: No, ma'am.

C.T. testified that the abuse sometimes happened several times a week and that she was not able to distinguish among all the different instances. C.T. also testified that appellant once made her engage in anal intercourse and that he also made her perform oral sex on him and he performed oral sex on her.

C.T. stated that sometimes R.T. would be in the same room while appellant abused her. When asked what C.T. saw appellant do to R.T., C.T. responded, "Basically, the same thing he did to me, like when she sat and put her mouth on his private area." C.T. testified that appellant would take photographs and videos of her and R.T. performing sexual acts and that he would make R.T. and C.T. perform sexual acts on each other. C.T. testified that K.T. once found out about the pictures that appellant had, but when the police showed up, appellant instructed C.T. and R.T. to lie about the pictures.

Jonna Hitchcock testified at trial that she had been assigned as the child advocate for R.T., J.T., and D.B. in December 2013. The three children were all living in separate homes, and C.T., who had made her outcry by this point, was living with her biological father and his wife and was not in CPS custody. In April 2014, Hitchcock received a phone call from R.T.'s stepmother, who told her that R.T. had made some disclosures of abuse to her friend at school, and her friend had told her mother, who contacted R.T.'s stepmother. Hitchcock and R.T.'s stepmother told R.T.'s friend to encourage R.T. to tell an adult about what had happened, and R.T. decided to speak to Hitchcock. R.T., while her friend was present, disclosed to Hitchcock that appellant had sexually abused her.

R.T. testified that she was six or seven the first time appellant did something inappropriate to her and that this lasted until she was twelve. The first times he touched her, he would put his hand on her vagina. Appellant would sometimes make her touch his penis with her hand or her mouth, and he would also perform oral sex on her and make her engage in anal intercourse. R.T. also described an incident that occurred at appellant's house when she was eleven. She was in appellant's bedroom, and he told her to take off her clothes, and he took off his clothes and made her engage in vaginal intercourse. R.T. stated that by the time she was ten or eleven, the abuse would occur almost every night. R.T. saw appellant do the same things to C.T. that he would do to her. She testified that appellant made her and C.T. touch each other sexually and that he would take pictures of them together.

R.T. acknowledged that when she first spoke to Lisa Holcomb in September 2013, after C.T. had made her outcry, she did not tell Holcomb what had happened, and instead she told Holcomb that C.T. was making the allegations up. R.T. stated that

she did this "[b]ecause I was scared. I just felt like I shouldn't have told." In May 2014, R.T. had a second interview with Holcomb, and that time she disclosed appellant's abuse against her.

Appellant called his mother, Lucinda Buxton, to testify on his behalf. Lucinda testified that the following people lived in or stayed at her house on a regular basis: herself, appellant, K.T., R.T., C.T., J.T. D.B., appellant's two other children, and two of appellant's nephews. Lucinda testified that her house had 1250 square feet of living space and had three bedrooms. She had a bedroom, appellant had a bedroom, and one of appellant's nephews had a bedroom. She stated that her policy was that all doors in the house had to remain open with the exception of her bedroom door and the bathroom door if someone was in there. Lucinda never observed any fear or reluctance by R.T. or C.T. when they would interact with appellant.

The jury found appellant guilty of the offense of continuous sexual abuse of a child and assessed his punishment at confinement for life. Appellant filed a motion in arrest of judgment, which the trial court denied. This appeal followed.

## Sufficiency of Evidence

In his fourth issue, appellant contends that the State failed to present sufficient evidence that the acts of sexual abuse against C.T. occurred during a period of thirty or more days in duration, as required to support a conviction of continuous sexual abuse of a child. Appellant acknowledges that the evidence is sufficient to support a conviction for aggravated sexual assault of a child and requests that the judgment be reformed to reflect a conviction for that offense.

### A. Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011) (quoting *Clayton*, 235 S.W.3d at 778). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

### B. Acts Occurring During Period of Thirty of More Days in Duration

To establish that appellant committed the offense of continuous sexual abuse of a child, the State was required to prove that appellant, during a period of time thirty or more days in duration, committed at least two acts of sexual abuse against C.T., a child younger than fourteen years of age, while he was at least seventeen years of age at the time of each of the acts. See TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2016). An "act of sexual abuse" is defined as including an act that constitutes the offense of aggravated sexual assault. Id. § 21.02(c)(4); see id. § 22.021(a)(1)(B) (West Supp. 2016) (enumerating acts that constitute offense of aggravated sexual assault, including causing penetration of child's anus or sexual organ, causing penetration of child's mouth by actor's sexual organ, and causing child's sexual organ, anus, or mouth to contact or penetrate mouth, anus, or sexual organ of another person). The State need not prove the exact dates of the abuse, only that "there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." Brown v. State, 381 S.W.3d 565, 574 (Tex. App.—Eastland 2012, no pet.); Lane v. State, 357 S.W.3d 770, 773–74 (Tex. App.— Houston [14th Dist.] 2011, pet. ref'd) (stating that factfinder is not required to agree on exact dates that acts of sexual abuse were committed).

C.T. testified that appellant first started abusing her when she was six or seven years old. C.T. was born in August 2002, so the abuse began in 2008 or 2009. On the first occasion, which occurred in appellant's eighteen-wheeler truck, he made her touch his penis and then he rubbed his penis on her vagina. On other occasions, in appellant's bedroom at his mother's house, he made C.T. touch his penis and sit on him so that his penis contacted her vagina. When asked how often this occurred, C.T. stated, "I would say sometimes it would be every night. Sometimes it would be every other night. Sometimes it would be kind of spaced out, like once a week or so." C.T. stated that the abuse sometimes happened several times a week and that she could not distinguish between each instance of abuse. C.T. testified that appellant made her engage in anal intercourse, he made her perform oral sex on him, and he performed oral sex on her. She testified that the last time appellant had done something "physical" to her was when she was ten years old, which was in late 2012 and early 2013.

R.T. testified that, in addition to abusing her, appellant also abused C.T. in R.T.'s presence. She saw appellant do to C.T. "[p]retty much everything he did to [R.T.]," which included forcing the girls to engage in oral, vaginal, and anal intercourse. R.T. estimated that the abuse occurred "maybe when [C.T.] was seven until she was—a little bit before she moved out, moved in with her dad," which occurred in 2013. Both C.T. and R.T. testified that appellant would force them to perform sexual acts on each other, including forcing C.T. to place her mouth on R.T.'s vagina, and vice versa, acts which also constitute acts of aggravated sexual assault. See TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(v) (providing that person commits offense of aggravated sexual assault if he intentionally or knowingly causes mouth of child to "contact the anus or sexual organ of another person") (emphasis added).

Dr. Donaruma testified that, during C.T.'s medical examination at the Children's Assessment Center in May 2013, C.T. told her that appellant forced her to engage in oral, vaginal, and anal intercourse and that this had occurred "since [C.T.] was five, all the way till now, when

[she] was ten." C.T.'s outcry note to B.S. and C.S. also stated that appellant inappropriately touched her, including forcing her to perform oral sex on him, and that this behavior stopped "right before [she] started to see her dad again" in 2013.

The State thus presented testimony that appellant performed acts constituting sexual abuse against C.T. from when she was six or seven years old to when she was ten years old. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury reasonably could have concluded beyond a reasonable doubt that appellant committed at least two acts of sexual abuse against C.T. during a period of time thirty or more days in duration. *See id.* § 21.02(b); *Brown*, 381 S.W.3d at 574.

We overrule appellant's fourth issue.

### Sufficiency of Indictment

In his first issue, appellant argues that the trial court erred in failing to quash the indictment, which did not allege the specific acts of aggravated sexual assault appellant committed against C.T. Appellant also argues that the indictment failed to allege the requisite culpable mental state and that the indictment's lack of specificity exposes him to the risk of double jeopardy.

#### A. *Failure to Provide Adequate Notice*

██ The sufficiency of an indictment is a question of law that we review de novo. *Smith v. State*, 297 S.W.3d 260, 267 (Tex. Crim. App. 2009). An accused is constitutionally entitled to notice of the charges against him as a matter of due process. *Id.* (citing U.S. CONST. amend. VI and TEX. CONST. art. I, § 10). The indictment must be specific enough to inform the defendant of the nature of the accusations against him so he may prepare a defense. *Id.*; *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); *see also* TEX.

CODE CRIM. PROC. ANN. art. 21.03 (West 2009) ("Everything should be stated in an indictment which is necessary to be proved."); TEX. CODE CRIM. PROC. ANN. art. 21.04 (West 2009) ("The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense."); TEX. CODE CRIM. PROC. ANN. art. 21.11 (West 2009) ("An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment . . . .").

██ "[A] charging instrument which tracks the language of a criminal statute possesses sufficient specificity to provide a defendant with notice of a charged offense in most circumstances." *State v. Edmond*, 933 S.W.2d 120, 128 (Tex. Crim. App. 1996); *see Moff*, 154 S.W.3d at 602 ("[O]rdinarily, an indictment is legally sufficient if it delineates the penal statute in question."). "But when a statute defines the manner or means of commission in several alternative ways, an indictment will fail for lack of specificity if it neglects to identify which of the statutory means it addresses." *Pollock v. State*, 405 S.W.3d 396, 403 (Tex. App.—Fort Worth 2013, no pet.); *see also State v. Barbernell*, 257 S.W.3d 248, 251 (Tex. Crim. App. 2008) ("Thus, 'if the prohibited conduct is statutorily defined to include more than one manner or means of commission, the State must, upon timely request, allege the particular manner or means it seeks to establish.'") (quoting *Saathoff v. State*, 891 S.W.2d 264, 266 (Tex. Crim. App. 1994)). The Court of Criminal Appeals has held:

In analyzing whether a charging instrument provides adequate notice, our notice jurisprudence makes clear that courts must engage in a two-step analysis. First, a court must identify the elements of an offense. As recognized in *Gray [v. State*, 152 S.W.3d 125 (Tex. Crim. App. 2004) ], the elements, defined by the Legislature, include: the forbidden conduct, the required culpability, if any, any required result, and the negation of any exception to the offense. Next, as to the second inquiry, when the Legislature has defined an element of the offense that describes an act or omission, a court must ask whether the definitions provide alternative manners or means in which the act or omission can be committed. If this second inquiry is answered in the affirmative, a charging instrument will supply adequate notice only if, in addition to setting out the elements of an offense, it also alleges the specific manner and means of commission that the State intends to rely on at trial.

*Barbernell*, 257 S.W.3d at 255.

 A complaint that an indictment fails to provide adequate facts to give notice of the offense that he is charged with is a complaint about a defect in form. *Olurebi v. State*, 870 S.W.2d 58, 61 (Tex. Crim. App. 1994). A defect of form does not render an indictment insufficient unless the defect prejudices the defendant's substantial rights. *Id.*; *see also* TEX. CODE CRIM. PROC. ANN. art. 21.19 (West 2009) ("An indictment shall not be held insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant."). However, the due-process requirement of notice may be satisfied by means other than the language in the charging instrument. *Smith*, 297 S.W.3d at 267; *Kel-*

*lar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003). When the trial court overrules a motion to quash, the defendant does not suffer harm "unless he did not, in fact, receive notice of the State's theory against which he would have to defend." *Smith*, 297 S.W.3d at 267 (citing *Kellar*, 108 S.W.3d at 313).

Penal Code section 21.02(b) provides that a person commits the offense of continuous sexual abuse of a child if, during a period of time that is thirty days or more in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts are committed against one or more victims, and if, at the time of each of the acts, the actor is seventeen years of age or older and the victim is younger than fourteen. TEX. PENAL CODE ANN. § 21.02(b). Section 21.02(c) then provides that "act of sexual abuse" means any act that is a violation of one or more of eight different sections of the Penal Code, including an act of aggravated sexual assault under Penal Code section 22.021. *Id.* § 21.02(c). Section 22.021 provides five specific ways in which a person can commit aggravated sexual assault of a child, including intentionally or knowingly "caus[ing] the penetration of the anus or sexual organ of a child by any means," "caus[ing] the penetration of the mouth of a child by the sexual organ of the actor," "caus[ing] the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor," "caus[ing] the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor," and "caus[ing] the mouth of a child to contact the anus or sexual organ of another person, including the actor." *Id.* § 22.021(a)(1)(B).

Several of our sister courts have addressed the elements of the offense of continuous sexual abuse of a child in the

context of determining the *actus reus* of the offense for jury unanimity purposes. The Austin Court of Appeals determined that, under the plain language of section 21.02, "it is the commission of two or more acts of sexual abuse over the specified time period—that is, the pattern of behavior or the series of acts—that is the actus reus element of the offense as to which the jurors must be unanimous in order to convict." *Jacobsen v. State*, 325 S.W.3d 733, 737 (Tex. App.—Austin 2010, no pet.); *see also* TEX. PENAL CODE ANN. § 21.02(d) ("If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse."); *Holton v. State*, 487 S.W.3d 600, 606–07 (Tex. App.—El Paso 2015, no pet.) (agreeing with *Jacobsen*); *Lane*, 357 S.W.3d at 776 (same).

The Austin Court further stated, "The individual acts of sexual abuse that make up this pattern of behavior or series of acts are not themselves elements of the offense, but are merely evidentiary facts, the manner and means by which the actus reus element is committed." *Jacobsen*, 325 S.W.3d at 737; *see Pollock*, 405 S.W.3d at 405 ("The individual sexual abuse acts alleged made up the 'series' of sexual acts that created a single element of continuous sexual assault of a child.").

Appellant argues that the indictment in this case was fatally defective because it failed to allege all essential elements of the offense of continuous sexual abuse, specifically, it failed to allege precisely how appellant committed the acts of aggravated assault against C.T.

The indictment in this case alleged:

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, **JUSTIN DAREN BUXTON**, hereafter styled the Defendant, heretofore on or about **October 15, 2007 and continuing through October 15, 2012,** did then and there unlawfully, during a period of time thirty or more days in duration, commit at least two acts of sexual abuse against a child younger than fourteen years of age, including an act constituting the offense of aggravated sexual assault of a child, committed against [C.T.] on or about October 15, 2007, and an act constituting the offense of aggravated sexual assault of a child, committed against [C.T.] on or about October 15, 2012, and the Defendant was at least seventeen years of age at the time of the commission of each of those acts.

Appellant moved to quash the indictment, arguing that the indictment did not give him proper notice because it failed to allege the manner and means by which he committed aggravated sexual assault against C.T.

 We agree with appellant that section 21.02 statutorily defines the manner or means of committing the offense of continuous sexual abuse of a child in several alternative ways. *See* TEX. PENAL CODE ANN. § 21.02(c) (defining "act of sexual abuse" as "any act that is a violation of one or more" of eight specifically enumerated sections of Penal Code); *Pollock*, 405 S.W.3d at 403 (noting that continuous sexual abuse of child defines "act of sexual abuse" element in several ways, including aggravated sexual assault, and that Penal Code "identifies several alternative means of committing aggravated sexual assault"); *see also Barbernell*, 257 S.W.3d at 255 (stating that when definition of offense provides alternative manner or means,

charging instrument provides adequate notice only if, in addition to setting out elements of offense, it alleges specific manner and means of commission that State intends to rely upon at trial). Thus, to be sufficiently specific, the indictment must identify the specific "act of sexual abuse" pursuant to section 21.02(c) that the defendant allegedly committed. *See* TEX. PENAL CODE ANN. § 21.02(c). Here, the indictment alleged that appellant committed two acts constituting the predicate offense of aggravated sexual assault of a child against C.T. *See id.* § 21.02(c)(4) (stating that act that violates Penal Code section 22.021, prohibiting aggravated sexual assault, constitutes "act of sexual abuse").

Appellant contends that this is not sufficient and that the State had to allege in the indictment the specific manner and means by which he committed aggravated sexual assault against C.T. No other case has addressed what the State is required to allege in the indictment to provide sufficient notice of a continuous sexual abuse offense. *Cf. Pollock*, 405 S.W.3d at 404 (holding that amended indictment alleging specific means by which defendant committed "the individual sexual abuse acts of aggravated sexual assault and sexual performance by a child" provided sufficient notice, but not holding that such specificity was constitutionally required). The State, however, in arguing that it was not required to allege the specific means by which appellant committed aggravated sexual assault, points to offenses that, similar to continuous sexual abuse of a child, are defined by reference to the underlying predicate offenses.

One of the offenses the State points to is capital murder. Capital murder occurs when a defendant intentionally or knowingly causes the death of an individual plus a statutorily-defined aggravating factor. *See* TEX. PENAL CODE ANN. § 19.03(a) (West

Supp. 2016). One of the defined aggravating factors is intentionally committing murder in the course of committing or attempting to commit kidnapping, burglary, robbery, aggravated sexual assault, arson, obstruction or retaliation, or terroristic threat. *Id.* § 19.03(a)(2). Many of these underlying offenses, such as burglary, for example, have multiple manner and means by which the offense could be committed. *See id.* § 30.02(a) (West 2011) (providing multiple means by which person can commit offense of burglary); *id.* § 36.06(a) (West 2016) (providing multiple means by which person can commit offense of obstruction or retaliation).

Texas courts, including the Court of Criminal Appeals, have repeatedly addressed whether the State, in a capital murder indictment, is required to allege the specific elements of the underlying offense. In *Alba v. State*, in which the capital-murder defendant was charged with murder in the course of committing burglary, the Court of Criminal Appeals rejected the defendant's argument that the State should have been required to allege the elements of the underlying burglary, including the specific manner and means by which he allegedly committed burglary, in the indictment. 905 S.W.2d 581, 585 (Tex. Crim. App. 1995). The court stated, "[W]e have repeatedly held that an indictment need not allege the constituent elements of the underlying offense which elevates murder to capital murder." *Id.*; *see also Kitchens v. State*, 279 S.W.3d 733, 736 (Tex. App.—Amarillo 2007, pet. ref'd) (following *Alba* and holding, in capital murder case in which defendant was charged with murder in course of committing burglary, that "the specific theory of burglary need not be alleged in a capital murder indictment based upon the aggravating offense of burglary").

Courts have followed this rationale involving other offenses that are defined by reference to an underlying predicate offense. Penal Code section 71.02, prohibiting organized criminal activity, provides that a person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit one or more of over thirty listed offenses, ranging from "any offense classified as a felony under the Tax Code" to capital murder. *See* Tex. Penal Code Ann. § 71.02(a) (West Supp. 2016). Courts have again repeatedly held that, in organized crime cases, the State is not required to allege in the indictment the specific manner and means by which the defendant committed the underlying predicate offense. *See Jarnigan v. State*, 57 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd); *State v. Rivera*, 42 S.W.3d 323, 329 (Tex. App.—El Paso 2001, pet. ref'd); *Crum v. State*, 946 S.W.2d 349, 359 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd).

Similarly, sexual assault is generally considered a second-degree felony, but it is a first-degree felony "if the victim was a person whom the actor was prohibited from marrying ... under section 25.01." Tex. Penal Code Ann. § 22.011(f) (West 2011). Section 25.01, entitled "Bigamy," provides multiple means by which a person can commit that offense. *Id.* § 25.01(a) (West Supp. 2016). In *State v. Hernandez*, the defendant was charged with sexual assault of a child, and while the indictment specified that the complainant was a person whom the defendant was prohibited from marrying under section 25.01, the indictment did not allege *how* the complainant was a person the defendant was prohibited from marrying. 395 S.W.3d 258, 259–60 (Tex. App.—San Antonio 2012, no pet.). In reversing the trial court's order

granting the defendant's motion to quash the indictment, the San Antonio Court of Appeals noted that the allegation of bigamous conduct under section 25.01 is an element of first-degree sexual assault and not merely a punishment enhancement, and, as such, it must be pled in the indictment and proven beyond a reasonable doubt at the guilt-innocence phase of trial. *Id.* at 260. In determining the pleading requirements for bigamous conduct in this context, the court considered this situation "to be similar to those when the State alleges that a person has committed capital murder or has engaged in organized criminal activity because both offenses incorporate another offense as part of their elements." *Id.* at 261. The San Antonio court held that the State was not required to plead the specific theory of bigamy under section 25.01 to give adequate notice of first-degree sexual assault under section 22.011(f). *Id.* at 262. The court concluded that by tracking the statutory language of section 22.011, including subsection (f), the indictment provided constitutionally sufficient notice of the sexual assault charge. *Id.*

 In enacting the continuous sexual abuse of a child statute, the Legislature sought to penalize "the common factual scenario of an ongoing crime involving an abusive sexual relationship of a child." *Price v. State*, 434 S.W.3d 601, 607 (Tex. Crim. App. 2014) (quoting *Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) (Cochran, J., concurring)). The prohibited act under this statute is a "repetitive course of conduct over an extended period of time." *Id.* at 608; *see also Jacobsen*, 325 S.W.3d at 737 (stating that actus reus of continuing sexual abuse of child is "the pattern of behavior or the series of acts"). To commit the offense of continuing sexual abuse, the defendant must commit two or more "acts of sexual abuse," which is stat-

utorily defined by reference to eight different offenses under the ·Penal Code. TEX. PENAL CODE ANN. § 21.02(c). Thus, this statute, like the organized criminal activity statute, first-degree sexual assault, and one subsection of the capital murder statute, defines the offense in terms of underlying predicate offenses.

The Fourteenth Court of Appeals reached the same conclusion in *State v. Stukes* when it addressed the pleading requirements for Penal Code section 25.11, which prohibits continuing family violence. *See* 490 S.W.3d 571, 575–77 (Tex. App.— Houston [14th Dist.] 2016, no pet.). That statute provides that a person commits an offense if, during a period that is twelve months or less in duration, the person two or more times engages in conduct constituting an offense ·under section 22.01(a)(1)—the statute defining bodily-injury assault—against a family member or a person with whom the actor· is in a dating relationship. *See* TEX. PENAL CODE ANN. § 25.11 (West 2011). The court noted that continuing family violence is a "distinct crime" from "simple assault" and that there is a distinction between challenging the sufficiency of the allegations of "one of the underlying offenses of assault" and "not the primary offense of continuing family violence." *Stukes*, 490 S.W.3d at 575–76.

In addressing whether the State was required to allege the manner and means of the "predicate assaults" in a continuing family violence case, the court analogized the case to organized crime cases which, as discussed above, do not require the State to allege the manner and · means of· the underlying offense. *Id.* The court also noted that an indictment for the offense of robbery, which is predicated on the offense of theft, did not need to allege the manner and means committing the underlying theft. *Id.* at 575 (citing *Linville v. State*, 620 S.W.2d 130, 131 (Tex. Crim. App. 1981)). Ultimately, the Fourteenth Court concluded that, when "[a]pplying the general principle that the indictment for a crime predicated on an underlying offense need not allege the elements, including the manner and means, of the underlying offense," an indictment for continuing family violence under section 25.11 "need not allege the manner and means of the underlying assaults." *Id.* at 577.

We agree with the State that the same rationale applies in this case with respect to the continuing sexual abuse of a child statute. We therefore adopt this rationale and hold that, in charging an offense for continuous sexual abuse, the State need not allege the specific manner and means by which the defendant allegedly committed the predicate offenses to provide constitutionally sufficient notice of the crime with which he is charged. *See Alba*, 905 S.W.2d at 585; *Stukes*, 490 S.W.3d at 575–77; *Hernandez*, 395 S.W.3d at 262; *Kitchens*, 279 S.W.3d at 736; *Jarnigan*, 57 S.W.3d at 92. Here, the State tracked the language of section 21.02, under which appellant was charged, and alleged that appellant committed two predicate acts of aggravated sexual assault against C.T. Although the State may choose to allege the predicate acts with specificity as to the manner and means in which they were committed, the State is not constitutionally required to do so. We hold that the indictment in this case provided constitutionally sufficient notice of the charged offense of continuous sexual abuse to appellant.

Furthermore, even if the indictment was not sufficient, standing alone, to provide notice to appellant, when analyzing whether a defendant received notice of the offense adequate to satisfy due process concerns, we are not required to look solely to the language of the charging instrument. *See Smith*, 297 S.W.3d at 267;

*Kellar*, 108 S.W.3d at 313. Instead, the defendant does not suffer harm unless he did not receive notice of the State's theory against which he would have to defend. *Smith*, 297 S.W.3d at 267 (citing *Kellar*, 108 S.W.3d at 313).

 In addition to the allegations in the indictment, the criminal complaint included a three-page probable cause affidavit by Sergeant J. Klafka, with the Harris County Sheriff's Office, who averred that he had reviewed the video recording of C.T.'s forensic interview. Sergeant Klafka specifically described the contents of C.T.'s forensic interview, detailing C.T.'s accusations against appellant, including appellant's acts against R.T. and his requirements that the girls perform sexual acts against each other. The State filed a notice of its intent to use C.T.'s and R.T.'s outcry statements, which included detailed summaries of an interview with B.S., C.T.'s forensic interview, C.T.'s medical examination with Dr. Donaruma, an interview with Jonna Hitchcock, R.T.'s forensic interview, and R.T.'s medical examination with Dr. Lyn Anderson. The State also filed notice of its intent to use the records from C.T.'s medical examination with Dr. Donaruma, which included a recordation of the questions that Dr. Donaruma asked C.T. and C.T.'s responses disclosing the abuse. Furthermore, the State also filed a notice of its intent to use extraneous offenses pursuant to Rule 404 and article 38.37, which set out in detail the specific acts of aggravated sexual assault and indecency with a child that appellant allegedly committed against both C.T. and R.T.

We conclude that, when considering the indictment and the various pretrial filings by the State together, as we are authorized to do, appellant received ample notice of the State's theory of criminal liability such that he could prepare a defense. *See Bleil v. State*, 496 S.W.3d 194, 205 (Tex. App.—Fort Worth 2016, pet. ref'd) (noting, in case in which defendant was convicted as party to continuous sexual abuse and indictment specified manner and means of primary actor's acts of sexual abuse, that defendant "received ample notice of the State's theory of criminal liability" when State filed notice of complainant's outcry statements, which "paralleled her detailed trial testimony"); *Stukes*, 490 S.W.3d at 577 (holding, in continuing family violence case, that defendant "had ample notice in addition to that provided by the indictment" when prosecutor had provided defendant's counsel with offense reports and videotapes regarding two predicate assaults).

We hold that the trial court did not err in failing to quash the indictment in that appellant had adequate notice of the State's theory of criminal liability to prepare his defense.

### B. Failure to Allege Culpable Mental State

Appellant further argues that the indictment was defective because it failed to allege a culpable mental state. He argues that section 21.02 does not require a specific culpable mental state and that Penal Code section 6.02 requires the State to plead one. *See* TEX. PENAL CODE ANN. § 6.02(b)–(c) (West 2011) (providing that if definition of offense does not prescribe culpable mental state, one is required unless definition "plainly dispenses with any mental element," and if one is required, "intent, knowledge, or recklessness suffices to establish criminal responsibility").

The Fourteenth Court of Appeals has considered this argument in the context of a complaint that the jury charge failed to properly instruct the jury about the culpable mental state required for the offense of continuous sexual abuse of a child. *See*

*Lane*, 357 S.W.3d at 774–75. The Fourteenth Court stated:

Section 21.02, however, is defined in terms of other acts that *by their terms* require a culpable mental state. Section 21.02's express requirement that these acts be committed is therefore functionally indistinguishable from an express requirement of the mental state essential to their commission. Section 21.02 need not prescribe some additional mental state because its *actus reus* is merely the repeated commission of acts already requiring culpable mental states. It follows that section 6.02, which by its terms applies only to statutes that do not set forth a culpable mental state, is inapplicable to section 21.02.

*Id.* at 776 (internal citations omitted) (emphasis in original). The court continued by noting that, in section 21.02, the Legislature expressly prescribed additional intent elements for some of the predicate acts for continuous sexual abuse, such as providing that aggravated kidnapping may be a predicate act if it was committed "with the intent to violate or abuse the victim sexually" and that burglary may be a predicate act if it was committed with the intent to commit certain sexual offenses. *Id.*; *see* Tex. Penal Code Ann. § 21.02(c)(1), (5). The court concluded that the Legislature included additional intent elements for some of the predicate acts but did not include "language assigning an additional culpable mental state to the offense of continuous sexual abuse as a whole, indicat[ing] that it did not intend to require an additional mental state." *Lane*, 357 S.W.3d at 776; *see also Jacobsen*, 325 S.W.3d at 739–40 ("The acts of sexual abuse alleged in the indictment were violations of statutes that themselves require a culpable mental state.").

■■■ The indictment in this case alleged two acts of aggravated sexual assault of C.T. as the predicate acts for the offense of continuous sexual abuse. As the State points out, Penal Code section 22.021, which sets out the elements of aggravated sexual assault, lists five specific acts that constitute the offense of aggravated sexual assault when committed against a child. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B). To constitute the offense of aggravated sexual assault, section 22.021 requires that each of the acts be committed "intentionally or knowingly." *Id.* Aggravated sexual assault thus can only be committed if the actor acts "intentionally or knowingly."

We therefore agree with the State that because the indictment referenced two offenses for aggravated sexual assault of a child as predicate acts, and the only way the offense of aggravated sexual assault could be committed was if appellant acted intentionally or knowingly, the State was not required to allege an additional culpable mental state in the indictment. *See Lane*, 357 S.W.3d at 776; *Jacobsen*, 325 S.W.3d at 739–40.

### C. Failure to Protect Against Double Jeopardy

Appellant additionally argues that the lack of specificity in the indictment exposes him to the risk of double jeopardy. He argues that without knowing which predicate offenses of aggravated sexual assault the State charged him with, "nothing prevents the State from filing additional charges for each of the numerous acts of sexual assault that were presented at trial."

The Court of Criminal Appeals addressed a similar argument in *Burks v. State*, 876 S.W.2d 877, 888–89 (Tex. Crim. App. 1994). In that capital murder case, the defendant moved to quash the indictment, arguing that the indictment failed to allege the victim of the underlying robbery

offense and that this failure "denied him adequate notice of the charges against him and denied him the right to claim prior jeopardy or double jeopardy in a subsequent prosecution." *Id.* The Court of Criminal Appeals declined to address this argument, stating:

> In regards to any potential claim of jeopardy which appellant might have to assert in a future prosecution, the proper time to argue this issue is after he has been charged or indicted for that unnamed future offense. As of now, that issue is far from ripe. It is not properly before this Court in the instant appeal.

*Id.* at 889; *see also Keith v. State*, 782 S.W.2d 861, 864 (Tex. Crim. App. 1989) (declining to reach issue of whether court of appeals' reversal of involuntary manslaughter conviction barred subsequent prosecution for criminally negligent homicide and holding that "[t]his issue is not ripe for review because of the fact that there has not yet been an initiation of any subsequent prosecution").

■ Here, appellant has been convicted of continuous sexual abuse of a child. There is no indication in the record, and appellant makes no argument, that the State has initiated a subsequent prosecution for aggravated sexual assault based on one of the acts of abuse committed against C.T. Instead, appellant argues that because of the lack of specificity in the indictment, the State could undertake such a prosecution at some point in the future. If the State does so, that is the appropriate time for appellant to raise his double jeopardy contention. *See Burks*, 876 S.W.2d at 889; *Keith*, 782 S.W.2d at 864. Because the State has not done so, this portion of appellant's first issue is not ripe for our consideration.[2] *See Burks*, 876 S.W.2d at 889; *Keith*, 782 S.W.2d at 864.

We overrule appellant's first issue.

## Admissibility of Extraneous Offenses

In his second issue, appellant contends that the trial court abused its discretion in admitting evidence during the guilt-innocence phase of trial that he committed multiple uncharged acts of sexual abuse against C.T. and R.T. Specifically, he argues that the admission of this testimony violated his right to due process by depriving him of an impartial jury, by infringing on the presumption of innocence, and by lowering the State's burden of proof. In his third issue, appellant argues that the trial court abused its discretion in admitting this extraneous evidence because its prejudicial effect substantially outweighed its probative value in violation of Rule 403.

### A. *Standard of Review*

■ We review a trial court's ruling on the admissibility of extraneous-offense evidence for an abuse of discretion. *Wilson v. State*, 473 S.W.3d 889, 899 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (citing *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009)). We will not

---

**2.** We note that, in this case, the State charged appellant solely with the offense of continuous sexual abuse of C.T. It did not include any charges of aggravated sexual assault of C.T. as alternative counts. Although the jury charge included an instruction on the lesser-included offense of aggravated assault, the jury convicted appellant solely of the offense of continuous sexual abuse of a child. This is, therefore, not a case in which the jury convicted the defendant of both continuous sexual abuse and aggravated assault and the defendant argues on appeal that, as a result of double jeopardy, the conviction for aggravated sexual assault should be vacated. *See Carmichael v. State*, 505 S.W.3d 95, 101 (Tex. App.—San Antonio 2016, pet. ref'd) (vacating conviction for aggravated sexual assault of child when offense occurred within time period for continuous sexual abuse of child and jury convicted defendant of both offenses).

reverse a trial court's ruling on an evidentiary matter unless the decision was "outside the zone of reasonable disagreement." *Id.* at 899–900 (citing *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007)). We will not disturb the trial court's ruling if it can be justified on any theory of law applicable to the ruling. *Id.* at 900.

### B. Constitutionality of Article 38.37, Section 2

In determining the constitutionality of a statute, we presume that it is valid and that the Legislature did not act unreasonably or arbitrarily in enacting it. *Harris v. State*, 475 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). The appellant bears the burden of establishing that the statute is unconstitutional. *Id.*

The Due Process Clause of the Fifth Amendment requires that the State prove every element of the charged crime beyond a reasonable doubt. *Id.* (citing *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011)); *Belcher v. State*, 474 S.W.3d 840, 843 (Tex. App.—Tyler 2015, no pet.). Generally, an accused must be tried only for the charged offense and may not be tried for a collateral crime or for being a criminal generally. *Harris*, 475 S.W.3d at 399; *see also* TEX. R. EVID. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). "The essential guarantee of the Due Process Clause is that the government may not imprison or otherwise physically restrain a person except in accordance with fair procedures." *Harris*, 475 S.W.3d at 399. "To establish a due process violation, it is the appellant's burden to show that the challenged statute or rule violates those 'fundamental conceptions of justice which lie at

the base of our civil and political institutions and which define the community's sense of fair play and decency.' " *Belcher*, 474 S.W.3d at 844 (quoting *Dowling v. United States*, 493 U.S. 342, 353, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990)).

Code of Criminal Procedure article 38.37, section 1, applicable to the prosecution of a defendant for offenses including continuous sexual abuse of a child, provides:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1) the state of mind of the defendant and the child; and
>
> (2) the previous and subsequent relationship between the defendant and the child.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(b). Article 38.37, section 2, also applicable to a trial for continuous sexual abuse of a child, provides:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) [including an offense of aggravated sexual assault of a child] may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

*Id.* art. 38.37, § 2(b); *see also Belcher*, 474 S.W.3d at 844 (noting that section 2(b) allows admission of evidence that defendant has committed certain sexual offenses

against nonvictims of charged offense). Section 2-a provides:

> Before evidence described by Section 2 may be introduced, the trial judge must:
>
> (1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and
>
> (2) conduct a hearing out of the presence of the jury for that purpose.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a. The State must give the defendant notice of its intent to introduce article 38.37 evidence in its case in chief not later than the thirtieth day before trial. *Id.* § 3.

Although this Court has not previously considered whether section 2(b) violates due process guarantees, several of our sister courts have, and all of them have held that this statute is constitutional.[3] In *Harris*, the Fourteenth Court of Appeals began its analysis by noting that in enacting section 2(b), the Texas Legislature recognized that the statute would "bring the Texas Rules of Evidence closer to the Federal Rules of Evidence, specifically Federal Rule 413(a), which allows evidence of previous sexual assault cases to be admitted at trial." 475 S.W.3d at 401 (quoting Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 12, 83d Leg., R.S. (2013)); *see also* FED. R. EVID. 413(a) ("In a criminal case in which a defendant is accused of sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant."); FED. R. EVID. 414(a) ("In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant."). The *Harris* court noted that federal courts have repeatedly determined that Federal Rule 413(a) does not implicate a fundamental right and therefore does not violate due process. 475 S.W.3d at 401 (citing *United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998), and *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998)); *see also Belcher*, 474 S.W.3d at 846 (noting that one federal court concluded that Federal Rule 413 is constitutional if Rule 403 protections remain in effect).

The Fourteenth Court noted that, while Rule 404(b) generally prohibits the use of extraneous offenses, the Legislature has chosen to enact "specific and limited exceptions to this prohibition," and article 38.37, section 1—allowing evidence of other crimes, wrongs, or bad acts committed by the defendant against the child complainant—is one such exception that Texas courts have found to be constitutional. *See Harris*, 475 S.W.3d at 401 (citing *Martin v. State*, 176 S.W.3d 887, 902 (Tex. App.—Fort Worth 2005, no pet.), *Brantley v. State*, 48 S.W.3d 318, 329–30 (Tex. App.—Waco 2001, pet. ref'd), and *Jenkins v. State*, 993 S.W.2d 133, 136 (Tex. App.—Tyler 1999, pet. ref'd)).

The Legislature created another exception in section 2—allowing evidence of certain past sexual offenses committed against individuals other than the complainant in the charged offense—and spe-

---

**3.** In *Alvarez v. State*, a panel of this Court found that the defendant had failed to preserve for appellate review his complaint that article 38.37, section 2 violated due process guarantees. *See* 491 S.W.3d 362, 367–70 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). However, this Court stated, "[T]he only cases that the parties have pointed to, and that we have found through our own research, addressing the constitutionality of Article 38.37 have held that it is constitutional." *Id.* at 369.

cifically recognized that this evidence "is, by definition, propensity or character evidence and that it is admissible notwithstanding those characteristics." *Id.* at 402; *see* Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b) (providing that evidence admitted pursuant to this section is admissible "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant"). Section 2(b)'s legislative history "reflects that it was enacted to 'give prosecutors additional resources to prosecute sex crimes committed against children,'" recognizing that "[c]hildren often are targeted for these crimes, in part because they tend to make poor witnesses." *Harris*, 475 S.W.3d at 402 (quoting Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 12, 83d Leg., R.S. (2013)).

The Fourteenth Court further reasoned that section 2(b) contains numerous procedural safeguards that protect a defendant's right to a fair trial, including requirements that the trial court determine at a hearing outside the presence of the jury that the evidence will be adequate to support a finding that the defendant committed the separate offense beyond a reasonable doubt, that the defense counsel has the right to cross-examine the witnesses at the hearing, and that the State provide notice of its intent to use such evidence in its case in chief at least thirty days before trial.[4] *Id.* (citing Tex. Code Crim. Proc. Ann. art. 38.37, §§ 2, 2-a, 3); *see also Belcher*, 474 S.W.3d at 847 (holding that, before trial court may admit evidence pursuant to section 2, it must still conduct balancing test

under Rule 403 and may exclude evidence if its probative value is outweighed by danger of unfair prejudice). The *Harris* court thus concluded that section 2 does not lessen a defendant's presumption of innocence and does not alter the State's burden of proof, as the State is still required to prove every element of the charged offense beyond a reasonable doubt. 475 S.W.3d at 402; *see also Baez v. State*, 486 S.W.3d 592, 600 (Tex. App.—San Antonio 2015, pet. ref'd) (holding that section 2(b) enlarges scope of admissible testimony but does not alter quantum of proof required to support conviction). Our sister court held that article 38.37, section 2 "is constitutional and does not violate [a defendant's] constitutional right to due process." *Harris*, 475 S.W.3d at 403; *see also Distefano v. State*, —— S.W.3d ——, No. 14-14-00375-CR, 2016 WL 514232, at *8–10 (Tex. App.—Houston [14th Dist.] Feb. 9, 2016, pet. ref'd) (following *Harris*); *Bezerra v. State*, 485 S.W.3d 133, 139–40 (Tex. App.—Amarillo 2016, pet. ref'd) (following "well-reasoned opinion" in *Harris* and holding that section 2(b) does not violate defendant's due process rights); *Robisheaux v. State*, 483 S.W.3d 205, 213 (Tex. App.—Austin 2016, pet. ref'd) (following *Harris* and *Belcher* and holding section 2(b) is not facially unconstitutional); *Belcher*, 474 S.W.3d at 847 (noting, in holding that section 2(b) is constitutional, that statute is more narrowly drawn than its counterpart in federal rules).

■ We agree with our sister courts that have addressed this issue and hold that section 2(b) does not lessen the presumption of innocence or the State's bur-

---

4. Federal Rules 413 and 414 require that, if the prosecutor intends to offer this evidence, the prosecutor must disclose this evidence to the defendant at least fifteen days before trial. *See* Fed. R. Evid. 413(b); Fed. R. Evid. 414(b). The rules contain no requirement analogous to article 38.37, sec-

tion 2-a's requirement that the trial court hold a hearing to determine that the evidence will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a (West Supp. 2016).

den of proof and therefore does not violate a defendant's due process rights. *See, e.g., Harris*, 475 S.W.3d at 403.

We also agree with the State that both it and the trial court followed the procedural safeguards set out in sections 2-a and 3 of article 38.37.[5] On June 10, 2015, more than three months before appellant's trial, the State gave appellant notice of its intent to introduce, among other things, the section 2(b) evidence concerning extraneous bad acts committed against R.T. in its case in chief. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3. Shortly before trial, appellant requested that the trial court hold a "section 2-a hearing" outside the presence of the jury to determine the admissibility of any "separate offense" testimony that the State wished the introduce pursuant to section 2(b). The trial court held this hearing after voir dire and before the State began its case in chief. Jonna Hitchcock and R.T. testified at this hearing, with R.T. detailing the sexual abuse committed against her by appellant. Both witnesses were subject to cross-examination by appellant's counsel. At the end of the hearing, the trial court ruled, "I do determine that the evidence we've just been referring

to will likely be admitted at trial, will be adequate to support a finding by the jury that the defendant committed the separate offense [against R.T.] beyond a reasonable doubt." *See id.* § 2-a. The trial court also overruled appellant's Rule 403 objection, ruling that the probative value of this evidence was not substantially outweighed by any prejudicial effect, and overruled appellant's due process objections.

We hold that the trial court did not err by admitting the evidence that appellant committed extraneous bad acts against R.T. pursuant to article 38.37, section 2.

We overrule appellant's second issue.

## C. Rule 403

In his third issue, appellant contends that the extraneous offense evidence against R.T. violated Rule 403.[6]

▄▄▄▄▄▄ Rule 403 provides that a trial court may exclude otherwise relevant evidence if the probative value of that evidence is substantially outweighed by a danger of unfair prejudice, confusion of the issues, the misleading of the jury, undue delay, or the needless presentation of cumulative evidence.[7] TEX. R. EVID. 403. A

---

5. To the extent appellant complains that the trial court erroneously admitted testimony of extraneous acts he committed against C.T., appellant did not object at trial to any testimony concerning extraneous acts committed against C.T. Instead, as the State points out, the only objection was to extraneous acts committed by appellant against R.T. Appellant therefore has not preserved for appellate review any complaint that the trial court improperly allowed testimony of appellant's extraneous bad acts committed against C.T. *See* TEX. R. APP. P. 33.1(a).

6. To the extent appellant argues that evidence he committed extraneous bad acts against C.T. violates Rule 403, we note that the only Rule 403 objection that appellant made at trial concerns the evidence of extraneous bad acts committed against R.T. Appellant therefore has not preserved for appellate

review any complaint that the admission of evidence that he committed extraneous bad acts against C.T. violates Rule 403. *See* TEX. R. APP. P. 33.1(a).

7. Appellant also argues that because an analysis concerning whether evidence violates Rule 403 does not involve a credibility determination, this Court should review the trial court's ruling de novo, instead of for an abuse of discretion. "Whether evidence is admissible under Rule 403 is *within the sound discretion* of the trial court." *Burke v. State*, 371 S.W.3d 252, 257 (Tex. App.— Houston [1st Dist.] 2011, pet. dism'd, untimely filed) (emphasis added); *see also* TEX. R. EVID. 403 ("The court *may exclude* relevant evidence....") (emphasis added); *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013) ("We review a trial court's ruling under Rule 403 of the Texas

trial court, when conducting a Rule 403 analysis, must balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). "A Rule 403 analysis 'favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial.'" *Bezerra*, 485 S.W.3d at 140 (quoting *Booker v. State*, 103 S.W.3d 521, 533 (Tex. App.—Fort Worth 2003, pet. ref'd) (op. on reh'g)). A trial court's decision not to exclude evidence based on a finding that the danger of unfair prejudice does not substantially outweigh the evidence's probative value is entitled to deference. *See Wilson*, 473 S.W.3d at 900 (quoting *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). Rule 403 "envisions exclusion of evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)).

■ The trial court admitted R.T.'s testimony that appellant had started sexu-ally abusing her when she was six or seven years old and that this lasted until she was twelve. Appellant forced her to engage in oral, vaginal, and anal intercourse, and by the time she was ten or eleven years old, the abuse was occurring practically every night. R.T. witnessed appellant perform the same acts on C.T., and appellant occasionally made the girls perform sexual acts on each other.

Evidence that appellant sexually abused R.T. is relevant to whether appellant sexually abused C.T., the complainant in the underlying case. *See Robisheaux*, 483 S.W.3d at 220–21; *Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (holding that evidence that defendant had sexually abused two other children was "straightforward and directly relevant to the only issue in the case, namely whether [the defendant] abused [the complainant]"). This Court has previously held that "[b]ecause the evidence of prior sexual abuse of children 'was especially probative of [the defendant's] propensity to sexually assault children,' the Rule 403 balancing test normally will not favor the exclusion of evidence of the defendant's prior sexual assaults of children." *Alvarez v. State*, 491 S.W.3d 362, 371 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (quoting *Belcher*, 474 S.W.3d at 848).

Furthermore, as the State points out, appellant's primary defense at trial was that appellant's mother's house was too small, and too many people lived there, for appellant to have sexually abused C.T. as often as she claimed without anyone else in the house realizing what was happening. Appellant also pointed out during closing argument that C.T.'s outcry occurred shortly after she started living with her

---

Rules of Evidence for an abuse of discretion."). Appellant has not cited any authority holding that a trial court's Rule 403 ruling may properly be reviewed de novo, instead of for an abuse of discretion, and we decline appellant's invitation to do so here.

father, B.S., who had not seen C.T. for nearly five years and who was involved in a custody dispute with K.T. Appellant thus offered this as a motivation for C.T. to lie about the abuse. The evidence that appellant also sexually abused R.T., both alone and in the presence of C.T., rebuts both of appellant's defensive theories. *See, e.g., Distefano*, —— S.W.3d at ——, 2016 WL 514232, at *3 (holding that inherent probative force of extraneous offense evidence was "considerable" because it tended to contradict defendant's theory that incident with complainant "was a 'misunderstanding' or 'mistake' ").

We also note that, without R.T.'s testimony, the only witness to the acts of sexual abuse was C.T. Due to the lapse of time between the last instance of abuse and C.T.'s outcry, there was no DNA evidence to support her accusations against appellant, and her medical examination at the Children's Assessment Center was "normal." *See Robisheaux*, 483 S.W.3d at 220 (holding that State had strong need for extraneous offense evidence because without such evidence, "the State's case would have basically come down to" complainant's word against defendant's); *Belcher*, 474 S.W.3d at 848 (pointing out, in holding that trial court did not violate Rule 403 by admitting extraneous offense evidence, that complainant was only eyewitness to offense and no physical evidence supported her accusation); *see also Hammer*, 296 S.W.3d at 562 ("[T]he Rules of Evidence, especially Rule 403, should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in such 'he said-she said' cases."). Appellant emphasized this in closing argument, pointing out the delay in C.T.'s outcry and reminding the jury that no physical evidence corroborated C.T.'s accusations. We conclude that R.T.'s testimony was relevant and had considerable

probative force and that the State had great need of this evidence.

The evidence that appellant sexually abused another child in addition to the complainant in the charged offense was "clearly prejudicial" to his case. *See Bradshaw v. State*, 466 S.W.3d 875, 883 (Tex. App.—Texarkana 2015, pet. ref'd); *see also Belcher*, 474 S.W.3d at 848 ("The extraneous offense evidence was highly prejudicial, principally because it was especially probative of Appellant's propensity to sexually assault children."). The question, however, is whether this evidence was *unfairly* prejudicial.

Appellant argues that the evidence of the extraneous acts "provided an avenue for the jury to conclude that appellant committed the charged offense in conformity with his character." As the Texarkana Court of Appeals stated in *Bradshaw*, section 2(b) "recognizes that evidence of this type is, by definition, propensity, or character evidence. It is admissible notwithstanding those characteristics." 466 S.W.3d at 883; *see* Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b) (providing that extraneous offense evidence admitted pursuant to this section may be admitted "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant").

R.T.'s testimony "discussed actions that were no more serious than the allegations forming the basis for the indictment." *See Robisheaux*, 483 S.W.3d at 220; *see also Belcher*, 474 S.W.3d at 848 (noting that extraneous offense was "more repugnant and inflammatory than the offense alleged against [the complainant]," but still holding that trial court did not abuse its discretion by ruling that Rule 403 was not violated). Appellant "does not identify any particular facts" about R.T.'s testimony that makes it

"uniquely or unfairly prejudicial." *See Alvarez*, 491 S.W.3d at 371. Thus, although R.T.'s testimony was prejudicial, we conclude that it was not *unfairly* prejudicial. *See Bradshaw*, 466 S.W.3d at 883 (noting that plain language of Rule 403 does not allow court to exclude otherwise relevant evidence "when that evidence is merely prejudicial").

As we have already noted, R.T.'s testimony was relevant to the central issue in the case—whether appellant sexually abused C.T.—and the evidence was not "confusing or technical in nature." *See Robisheaux*, 483 S.W.3d at 220. Additionally, "the order in which the evidence was presented helped prevent any confusion of the issues or misleading the jury" because by the time the State introduced R.T.'s testimony, C.T. had already testified. *See Distefano*, —— S.W.3d at ——, 2016 WL 514232, at *4 (noting that because complainant had already testified by time extraneous-offense witness testified, extraneous testimony "buttressed" complainant's testimony). We conclude that R.T.'s testimony "did not have a tendency to distract the jury or to be given undue weight." *See Robisheaux*, 483 S.W.3d at 221; *see also Gigliobianco*, 210 S.W.3d at 641 (listing tendency of evidence to confuse or distract jury from main issues in case and tendency of evidence to be given undue weight by jury not equipped to evaluate probative force of evidence as factors to consider in Rule 403 analysis).

Finally, we note that, in a trial that spanned three days and 205 pages of testimony, R.T.'s testimony took up a total of 21 pages in the reporter's record.[8] Although some of R.T.'s testimony was duplicative of C.T.'s testimony concerning appellant's actions in occasionally abusing the girls in front of each other and occasionally forcing them to perform sexual acts on each other, only R.T. testified concerning the abuse that occurred when C.T. was not present. Furthermore, although the prosecutor mentioned R.T.'s testimony several times during closing arguments, the prosecutor focused on C.T.'s testimony, how detailed that testimony was, and the fact that her account of events had remained consistent over a period of years.

We therefore conclude that the State did not spend an "inordinate amount of time" developing R.T.'s testimony or emphasizing that testimony over C.T.'s testimony. *See Gigliobianco*, 210 S.W.3d at 641–42; *Robisheaux*, 483 S.W.3d at 221 (holding that extraneous offense evidence did not "consume an inordinate amount of time" when testimony took up eight pages of reporter's record that was hundreds of pages long); *see also Distefano*, —— S.W.3d at ——, 2016 WL 514232, at *4–5 (noting that extraneous offense testimony "took some time," but guilt-innocence phase lasted only three days, case was "relatively simple and straightforward," and State did not place "undue emphasis" on extraneous testimony).

We conclude, considering all of the relevant factors, that the trial court reasonably could have determined that the prejudicial effect of R.T.'s testimony did not substantially outweigh its probative value. We therefore hold that the trial court did not abuse its discretion by admitting R.T.'s testimony concerning the extraneous bad acts that appellant committed against her.

We overrule appellant's third issue.[9]

---

8. Jonna Hitchcock's testimony took up an additional ten pages in the reporter's record, but Hitchcock testified only concerning her relationship to R.T. as her child advocate and the circumstances surrounding R.T.'s outcry to her. She did not provide any details as to appellant's sexual abuse of R.T.

9. Because we have withdrawn our January 19, 2017 opinion and judgment and issued a new opinion and judgment in their stead,

**Conclusion**

We affirm the judgment of the trial court.

we dismiss appellant's motion for en banc reconsideration as moot. *See Giesberg v. State,* 945 S.W.2d 120, 131 n.3 (Tex. App.— Houston [1st Dist.] 1996), *aff'd,* 984 S.W.2d 245 (Tex. Crim. App. 1998).