**Opinion issued March 7, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00905-CR

———————————

## PATRICK LEON WASHINGTON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 208th District
Harris County, Texas
Trial Court Case No. 1490417**

---

## MEMORANDUM OPINION

A jury found appellant, Patrick Leon Washington, guilty of the felony offense of aggravated sexual assault of a child. After it found the enhancement allegation in the indictment true, the trial court assessed appellant's punishment at confinement

for life in the Texas Department of Criminal Justice, Institutional Division.[1] In his first point of error, appellant contends that article 38.37, section 2 of the Texas Code of Criminal Procedure is unconstitutional because the trial court's admission of extraneous offense evidence under this section violated his right to due process. In his second, third, and fourth points of error, he argues that the trial court abused its discretion when it allowed (1) the investigating officer to give her opinion regarding appellant's truthfulness; (2) the complainant's brother to testify as an outcry witness; and (3) the State to introduce his jail disciplinary records during the guilt/innocence phase of trial, and that these errors were not harmless. We affirm.

## Background

At trial, the State called Officer Roy Reed, a certified latent print examiner for the Harris County Sheriff's Office, as its first witness. Through Officer Reed's testimony, the State proved up appellant's prior conviction for sexual assault of a child between fourteen and seventeen years of age. Officer Reed testified that he had taken appellant's fingerprints that same morning, and that they matched the fingerprints in appellant's pen packet for his prior conviction. Over objection, the trial court admitted the pen packet (State's Exhibit 2).

---

[1] Texas Penal Code section 12.42(c)(2) imposes an automatic sentence of life imprisonment for a defendant convicted of a sexual offense listed in section 12.42(c)(2)(A) if he committed that offense after previously having been convicted of any of the enumerated sexual offenses in section 12.42(c)(2)(B). *See* TEX. PENAL CODE ANN. §12.42(c)(2).

Ebonie Butler, a deputy child abuse investigator with the Harris County Sheriff's Office, was assigned to investigate the complainant's sexual abuse allegations against appellant. She testified that the complainant was interviewed by a forensic interviewer and underwent a medical examination at the Children's Assessment Center (CAC). The medical records from the exam were admitted without objection (State's Exhibit 4). Deputy Butler interviewed appellant during her investigation. A redacted version of appellant's statement was admitted without objection (State's Exhibit 5A).

Susan Odhiambo, the CAC forensic interviewer, interviewed Theresa, the complainant,[2] on July 24, 2014. She testified that Theresa, who was eleven years old at the time, disclosed multiple instances of sexual abuse by appellant. Theresa began by telling Odhiambo that appellant, her stepfather, would tell her to give him a hug and take the opportunity to touch her butt and breast. Odhiambo testified that Theresa told her that appellant would also come into her room at night and "touch himself." She showed Odhiambo how he touched himself, which Odhiambo demonstrated at trial by making a hand with a hole in the middle and going up and down. Theresa also told Odhiambo that appellant would "touch her on her butt and

---

[2]    We have used pseudonyms to identify the witnesses who were minors at the time of the offense. *See* TEX. R. APP. P. 9.10(a)(3) (prohibiting disclosure of sensitive data, including "the name of any person who was a minor at the time the offense was committed").

3

her middle part with his middle part." Theresa told Odhiambo that once when appellant had some candy, he told Theresa that she could have some if she wrestled with him "in a nasty way," and that appellant would then touch her butt with his middle part on top of her clothes. Theresa told Odhiambo that appellant would also grab her arm and make her touch his middle part. Theresa told Odhiambo that if she refused to give appellant a hug, appellant would make her get in a closet. Theresa disclosed that appellant would also come into her room and pull down her clothes and tell her not to tell her mother.

Theresa was the next witness to testify. Appellant, whom Theresa referred to as "Coach Pat," was the coach of her brothers' little league football team. After her mother, Renee, and appellant married, appellant and his daughter, Lisa, moved in with Renee, her three sons, and her two daughters, Rachel and Theresa.

Theresa testified that, within a year after appellant moved into the house, he called her into his bedroom, removed her clothes, and touched her breast and vagina with his hands. Appellant told Theresa not to tell anyone because he would get in trouble with the police. After this incident, appellant fondled Theresa in his bedroom twice a week.

On one occasion, when Theresa and her younger brother were home alone with appellant, appellant called Theresa into his bedroom, told her to take off her clothes, and touched her with his hands. While Theresa was lying down, appellant

4

penetrated her vagina with his penis and ejaculated on the bed. Afterwards, appellant told Theresa to put her clothes back on and take a shower. Appellant continued to have sexual intercourse with Theresa twice a week until she began menstruating.

On other occasions, appellant called Theresa into his room while he was watching pornography and masturbating. Appellant also went into Theresa's bedroom at night, which she shared with her older sister, Rachel, and stepsister, Lisa, and touched her breast. Theresa did not tell her mother about the sexual abuse because her mother had health issues and Theresa did not want to put more pressure on her. Theresa testified that she told Rachel and Lisa about the sexual abuse because appellant had abused them as well. Other than Rachel and Lisa, Theresa did not tell anyone about the sexual abuse for two or three years.

Rachel was called to testify. She stated that, when she was about thirteen years old, appellant squeezed her breast while she was in the kitchen washing dishes. Appellant also touched her over and underneath her clothing. On one occasion, appellant called Rachel into her mother's room, pushed his penis onto her, and touched her vagina. Rachel told Theresa what appellant did to her, and she later told their older brother, Oshaa. Rachel also saw appellant touch Theresa's breast while she was asleep.

Denise, appellant's daughter, testified that she was estranged from her father until she was fifteen years old, when she saw appellant three or four times. On one

5

of those occasions, appellant caressed Denise's butt and asked her whether she would consider dating him if he was not her father. On another occasion, appellant called Denise into his room where a pornographic website was displayed, tried to take off her pants, and touched her vagina with his hand. After this last incident, Denise did not see appellant again until his trial.

Lisa, appellant's daughter, testified that she lived with appellant when she was thirteen years old. Lisa shared a bedroom with her stepsisters, Rachel and Theresa. On two occasions, appellant called Lisa into his room and touched her vagina with his hand. On a third occasion, appellant came up behind Lisa while she was in the garage and showed his penis to her. On a fourth occasion, appellant called Lisa into his room, pulled her into his bed, took her shorts off, and penetrated her vagina with his penis.

In 2014, Theresa's oldest brother, Oshaa, lived with his mother, appellant, his sisters, and his brothers. Oshaa testified that he became aware of certain "red flags" involving appellant, and he asked Rachel whether appellant had ever tried to touch her. Rachel told Oshaa that appellant was "kind of weird" and asked for hugs but that he had not tried to touch her. However, Rachel told Oshaa that he should talk to Theresa.

Theresa initially denied that appellant had touched her. When Oshaa told her that she would not get in trouble, Theresa told him that appellant "used to come in

6

her room late night and touch her private parts" and, on one occasion, "he made her touch his private part." Theresa also told Oshaa that she would lock herself in the bathroom when she got home from school because she and her younger brother were home alone with appellant. Oshaa called his maternal aunt, Tawinna Calais, and told her what Theresa had told him, and his aunt told Renee. The police were called but appellant left the house before they arrived.

Oshaa testified that three "red flags" prompted him to ask his sisters about appellant. The first one occurred when Oshaa's two godsisters, who lived with Oshaa's family when they were fifteen or sixteen years old, told him that appellant was "weird" and "watch[ed] them." The second red flag occurred when a police officer came to their home. Appellant later told Oshaa that "a thirteen-year old girl had lied on him," and that he was a registered sex offender. The third red flag occurred when Oshaa's girlfriend, who was then fifteen years old, told Oshaa that appellant had "tried to hit on her." Following Oshaa's testimony, the State rested.

The defense called Yakisha Washington, appellant's younger sister. Yakisha testified that she had grown up with appellant and that she had never seen any indication that he was attracted to children. Yakisha testified that, when she spoke to Theresa about her allegations against appellant, Theresa said that "he didn't do anything." According to Yakisha, there were a lot of problems in Theresa's home because of her older brother, Oshaa. She testified that she once saw Oshaa pull a

7

gun on appellant and, on another occasion, she saw him pull a knife on appellant. Yakisha testified that Oshaa wanted to fight appellant because of appellant's attempts to discipline Oshaa, and that Oshaa wanted appellant out of the house.

Tina Washington, appellant's mother, testified that she spoke with Theresa and her sister, Rachel, and that they both denied that appellant had sexually abused them. According to Tina, their stepsister, Lisa, bullied the girls and told them that she would fight them if they did not allege that appellant sexually abused them. According to Tina, Oshaa resented appellant living in his mother's house. Tina did not believe the allegations against appellant because there were a lot of children in their family and she had never seen any indication that appellant acted inappropriately with any of them.

Appellant testified that all of the allegations of sexual abuse against him arose because Oshaa wanted him out of the house. He described Oshaa as a gang member who refused to submit to any type of discipline. He testified that Oshaa pulled a gun on him on one occasion and a knife on another occasion. Appellant denied ever touching Theresa or molesting his biological daughter, Lisa.[3] As for Theresa's and Rachel's allegations against him, he testified that Oshaa put them up to it because he wanted to break up appellant's marriage.

---

[3] Appellant denied that Denise is his biological child.

At the conclusion of the guilt-innocence phase of trial, the jury found appellant guilty of aggravated sexual assault of a child. During the punishment phase, appellant pleaded true to the enhancement paragraph, and the trial court, after finding the enhancement allegation true, assessed appellant's punishment at mandatory life imprisonment. This appeal followed.

## Constitutionality of Code of Criminal Procedure Article 38.37

In his first point of error, appellant contends that Texas Code of Criminal Procedure article 38.37—under which the trial court admitted his prior conviction for sexual assault of a child and the testimony of three other alleged child abuse victims—is unconstitutional. Specifically, he argues that the admission of the extraneous evidence was so prejudicial that it violated any sense of fair play and it deprived him of his constitutional right to due process and a fair trial.

### A. Standard of Review

We review a trial court's ruling on the admissibility of extraneous offense evidence for an abuse of discretion. *Buxton v. State*, 526 S.W.3d 666, 685 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Wilson v. State*, 473 S.W.3d 889, 899 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (citing *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009)). We will not reverse a trial court's ruling on an evidentiary matter unless the decision was "outside the zone of reasonable disagreement." *Buxton*, 526 S.W.3d at 685–86.

9

## B. Applicable Law

In determining the constitutionality of a statute, we presume that it is valid and that the Legislature did not act unreasonably or arbitrarily in enacting it. *Id.* at 686; *Harris v. State*, 475 S.W.3d 395, 399 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). The appellant bears the burden of establishing that the statute is unconstitutional. *Buxton*, 526 S.W.3d at 686.

Article 38.37, section 2, applicable to a trial for aggravated sexual assault of a child, provides:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) [including an offense of aggravated sexual assault of a child] may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b); *see also Belcher v. State*, 474 S.W.3d 840, 844 (Tex. App.—Tyler 2015, no pet.) (noting that section 2(b) allows admission of evidence that defendant has committed certain sexual offenses against nonvictims of charged offense). Section 2-a provides:

> Before evidence described by Section 2 may be introduced, the trial judge must:
>
> (1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and

(2) conduct a hearing out of the presence of the jury for that purpose.

*Id.* § 2-a. The State must give the defendant notice of its intent to introduce article 38.37 evidence in its case-in-chief not later than the thirtieth day before trial. *Id.* § 3.

## C. Analysis

Several of the intermediate courts of appeals, including this Court, have addressed constitutional challenges to this statute and have uniformly found that section 2(b) is constitutional. *See, e.g.*, *Caston v. State*, 549 S.W.3d 601, 608 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Buxton*, 526 S.W.3d at 686–89; *Bezerra v. State*, 485 S.W.3d 133, 139–40 (Tex. App.—Amarillo 2016, pet. ref'd); *Robisheaux v. State*, 483 S.W.3d 205, 213 (Tex. App.—Austin 2016, pet. ref'd); *Harris*, 475 S.W.3d at 403; *Belcher*, 474 S.W.3d at 847. As we noted in *Buxton*

> [S]ection 2(b) contains numerous procedural safeguards that protect a defendant's right to a fair trial, including requirements that the trial court determine at a hearing outside the presence of the jury that the evidence will be adequate to support a finding that the defendant committed the separate offense beyond a reasonable doubt, that the defense counsel has the right to cross-examine the witnesses at the hearing, and that the State provide notice of its intent to use such evidence in its case in chief at least thirty days before trial.

526 S.W.3d at 688 (citing *Harris*, 475 S.W.3d at 402). We concluded that section 2(b) does not lessen a defendant's presumption of innocence and does not alter the State's burden of proof, as the State is still required to prove every element of the charged offense beyond a reasonable doubt. *Id.* at 688–89; *see also Harris*, 475 S.W.3d at 402; *Baez v. State*, 486 S.W.3d 592, 600 (Tex. App.—San Antonio 2015,

pet. ref'd) (holding that section 2(b) enlarges scope of admissible testimony but does not alter quantum of proof required to support conviction); *Bezerra*, 485 S.W.3d at 139–40 (following "well-reasoned opinion" in *Harris* and holding that section 2(b) does not violate defendant's due process rights); *Robisheaux*, 483 S.W.3d at 211–13 (following *Harris* and *Belcher* and holding section 2(b) is not facially unconstitutional); *Belcher*, 474 S.W.3d at 847 (noting, in holding that section 2(b) is constitutional, that statute is more narrowly drawn than its counterpart in federal rules).

The record also reflects that the procedural safeguards set out in sections 2-a and 3 of article 38.37 were followed in this case. More than six months prior to trial, the State gave appellant notice of its intent to introduce, among other things, extraneous evidence of appellant's prior conviction for sexual assault of a child, and appellant's sexual offenses against Lisa, Rachel, and Denise. *See* TEX. CODE CRIM. PROC. art. 38.37, § 3. During the trial, the court conducted separate hearings outside the presence of the jury to determine the admissibility of appellant's conviction and the testimony of each of these witnesses, and it ruled that the evidence was adequate to support a finding by the jury that the defendant committed each of the extraneous offenses beyond a reasonable doubt. The trial court also overruled appellant's Rule 403 objections, ruling that the probative value of this evidence was not substantially

outweighed by any prejudicial effect. The three witnesses were also subject to cross-examination by trial counsel. *See id.* § 2-a.

We reaffirm this Court's holding in *Caston* and *Buxton* that section 2(b) does not lessen the presumption of innocence or the State's burden of proof and, therefore, does not violate a defendant's due process rights. *See Caston*, 549 S.W.3d at 611; *Buxton*, 526 S.W.3d at 688–90. Because appellant has failed to establish that article 38.37 is unconstitutional, we overrule his first point of error.

### Deputy Butler's Testimony

In his second point of error, appellant contends that the trial court abused its discretion by allowing Deputy Ebonie Butler to testify that she did not find appellant credible after she interviewed him. Specifically, he argues that Deputy Butler's testimony, given just before his statement was played to the jury, established a filter through which appellant's statement was viewed. Thus, he concludes, the testimony had to have a substantial and injurious effect on how the jury saw his statement and ultimately on its verdict.

### A. Standard of Review and Applicable Law

A trial court's decision to admit evidence is reviewed for an abuse of discretion. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). A trial court abuses its discretion when its acts are arbitrary and unreasonable,

13

without reference to any guiding rules or principles, or is so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *See id.*

Evidence showing that an accused was deceptive during an investigation is relevant and admissible. *See Oliva v. State*, 942 S.W.2d 727, 732 (Tex. App.—Houston [14th Dist.] 1997, pet. dism'd). However, an expert is not permitted to give a direct opinion on the truthfulness of a witness because this is not a subject on which an expert's testimony would assist a factfinder. *See Yount v. State*, 872 S.W.2d 706, 709–10 (Tex. Crim. App. 1993). Similarly, a witness's expert opinion on the truthfulness of a criminal defendant during an investigation is also inadmissible. *See Gonzalez v. State*, 301 S.W.3d 393, 398 (Tex. App.—El Paso 2009, pet. ref'd) (concluding testimony of expert on heroin withdrawal was impermissible opinion on truthfulness of defendant's confession); *see, e.g., Poor v. State*, No. 11-14-00090-CR, 2016 WL 1072640, at *1 (Tex. App.—Eastland Mar. 17, 2016, pet. ref'd) (mem. op., not designated for publication) (concluding trial court erred in admitting detective's opinion that defendant "was not being fully truthful" during interview with detective). This rule applies to expert and lay witness testimony alike. *Blackwell v. State*, 193 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

## B. Error Analysis

Deputy Butler, the lead investigator, testified that she interviewed appellant during her investigation. On direct examination, the prosecutor asked Deputy Butler, "After speaking with the Defendant, did you find him to be credible in his story to you?" Deputy Butler responded that she did not, and trial counsel objected to "[t]he officer giving an opinion as to the credibility of the Defendant," arguing that it was "outside the province of this officer." In overruling the objection, the trial court stated, "based on [her] education and training and experience and her present sense impression with regard to what she saw, I'm going to allow that testimony in." The prosecutor then asked, "So you did not find the Defendant to be credible when he was making his statement?" to which Deputy Butler replied that she did not.

Appellant asserts—and the State concedes—that the introduction of Deputy Butler's testimony was improper. We agree. The trial court erred by admitting this testimony.

## C. Harm Analysis

However, even if the trial court errs in admitting expert testimony, this error is non-constitutional and requires reversal only if it affects the substantial rights of the accused. *See* TEX. R. APP. P. 44.2(b) (stating non-constitutional error must be disregarded unless it affects substantial right); *Petriciolet v. State*, 442 S.W.3d 643, 653 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). "We will not overturn a

15

criminal conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect." *Petriciolet*, 442 S.W.3d at 654 (citing *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011)).

In assessing the likelihood that the jury's decision was improperly influenced, we consider the record as a whole, including testimony and physical evidence, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *See Barshaw*, 342 S.W.3d at 94; *see also Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). Factors that we may consider include (1) the strength of the evidence of the appellant's guilt; (2) whether the jury heard the same or substantially similar admissible evidence through another source; (3) the strength or weakness of an expert's conclusions, including whether the expert's opinion was effectively refuted; and (4) whether the State directed the jury's attention to the expert's testimony during argument. *Petriciolet*, 442 S.W.3d at 654 (citing *Coble v. State*, 330 S.W.3d 253, 286 (Tex. Crim. App. 2010)).

Here, the evidence of appellant's guilt was strong. Theresa testified in detail about appellant's sexual abuse of her over the course of several years. Odhiambo, the forensic interviewer who interviewed Theresa, testified that Theresa disclosed multiple instances of sexual abuse by appellant and provided specific details of each

16

incident, and that her detailed disclosure "lends to her credibility." The record also reflects that Theresa's disclosure to the medical doctor who interviewed her was consistent with both Theresa's testimony and her disclosure to Odhiambo. Rachel, her sister, also corroborated Theresa's allegations when she testified that she saw appellant touch Theresa's breast while she was asleep. Further, the State introduced evidence that appellant had been previously convicted of sexual assault of a child, and the jury heard testimony that appellant had sexually abused Rachel as well as Lisa and Denise, his two biological daughters. *See Motilla*, 78 S.W.3d at 357 (stating that presence of overwhelming evidence of guilt should be considered in harm analysis under rule 44.2(b)).

The jury also heard similar evidence without objection. Prior to her testimony regarding appellant's credibility, Deputy Butler testified that the majority of appellant's statement during his interview was "self-serving." When asked by the prosecutor whether such statements are "meant to deflect or excuse behavior," Deputy Butler replied "yes." This testimony, which expressed Deputy Butler's negative opinion as to appellant's credibility, was admitted without objection. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."); *Washington v. State*, 485 S.W.3d 633, 638–39 (Tex. App.—Houston [1st Dist.]

17

2016, no pet.) (noting error in admission of evidence may be rendered harmless when substantially same evidence is admitted elsewhere without objection).

Moreover, Deputy Butler's testimony that she did not find appellant credible must be considered in light of her other testimony from which the jury could only conclude that she did not find appellant credible. Deputy Butler testified that she found Theresa's disclosure to the medical doctor consistent with her disclosure she made to Odhiambo. In contrast, Deputy Butler testified that, after she investigated the claims that appellant made in his interview, she forwarded the case for prosecution.[4] Given that Deputy Butler proceeded with charges against appellant following her investigation, the jury could reasonably infer that she did not find appellant to be credible and that she believed he had sexually abused Theresa. *See Sandoval v. State*, 409 S.W.3d 259, 295 (Tex. App.—Austin 2013, no pet.) (finding detective's testimony explaining his doubts about defendant's credibility and his belief of child sexual abuse victim's account not particularly powerful given fact that detective forwarded case to district attorney's office for prosecution after investigation and, therefore, factfinder could logically assume that he found victim

---

[4] For example, appellant told Deputy Butler that, two years before the sexual abuse allegations against him, Oshaa held appellant at gunpoint and that appellant's family called the police. Deputy Butler conducted a computer search for any calls for service related to the incident appellant described but did not find any. Deputy Butler also investigated appellant's claims that Theresa's aunt and brother were scheming against him. After speaking with Tawinna and Oshaa, Deputy Butler forwarded the charges against appellant.

18

credible, her allegations truthful, and believed appellant was guilty of committing alleged sexual assault); *see also Foster v. State*, No. 01-97-00871-CR, 1999 WL 33498, at *5 (Tex. App.—Houston [1st Dist.] Jan. 28, 1999, no pet.) (mem. op.) (not designated for publication) ("While it is error for an officer to testify as to the credibility of a defendant's story, the error is harmless if the opinion is a reasonable inference from other testimony, and the jury could not logically have reached a different conclusion.").

The State did not emphasize or direct the jury's attention to Deputy Butler's testimony during closing argument. The record reflects that the prosecutor mentioned Deputy Butler's testimony regarding grooming behaviors common to child sexual predators, but she did not refer to Butler's testimony regarding appellant's credibility. The prosecutor also told the jury that it could assess appellant's credibility from his own testimony.

Finally, the jurors were repeatedly instructed that they were the exclusive judges of the credibility of the witnesses. During voir dire, the trial court informed the venire, "You are the judges of the facts, and so you decide ultimately the credibility of the witnesses, who to believe, how much weight to give their testimony, and in the end you decide whether or not the person on trial is guilty or not guilty." The prosecutor also advised the venire panel, "[I]t's your job to weigh the credibility of the witnesses . . . ." The trial court also instructed the jury that they

19

were "the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony . . . ." After watching appellant's recorded statement and hearing the other properly admitted testimony at trial, the jury could have reasonably decided on its own that appellant was not credible. *See Flores v. State*, 513 S.W.3d 146, 171–72 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (holding trial court's error in admitting psychologist's testimony regarding children's truthfulness did not affect defendant's substantial rights where testimony was not calculated to inflame jury's emotions, substantially similar testimony was allowed without objection, jury charge instructed jury that it was the sole judge of credibility of witnesses and weight to be given to their testimony, and jury heard complainant provide detailed account regarding defendant's sexual assault); *Lopez v. State*, 288 S.W.3d 148, 159 (Tex. App.—Corpus Christi 2009, pet. ref'd) (holding that, despite State's emphasis of clinical psychologist's opinion regarding truthfulness of children, trial court's error in admitting testimony was harmless where jurors had been instructed that they were exclusive judges of credibility of witnesses and had received ample evidence through which they could form their own opinion of victim's credibility).

After examining the record as a whole, we conclude that, although error, the trial court's admission of Deputy Butler's testimony regarding appellant's credibility did not have a substantial and injurious effect or influence in determining the jury's

20

verdict. *Petriciolet*, 442 S.W.3d at 653. We overrule appellant's second point of error.

**Oshaa Banks's Testimony**

In his third point of error, appellant contends that the trial court abused its discretion when it allowed Oshaa Banks to testify as an outcry witness because it led to testimony that was so damaging as to affect appellant's substantial right to a fair trial.

## A. Standard of Review and Applicable Law

As with a trial court's ruling to admit or exclude evidence, a trial court's designation of an outcry witness is also reviewed under an abuse of discretion standard. *See Thomas v. State*, 309 S.W.3d 576, 578 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Article 38.072 of the Code of Criminal Procedure allows the admission of a hearsay statement made to an outcry witness by certain victims, including child victims of a sexual offense. *See* TEX. CODE CRIM. PROC. art. 38.072. The outcry witness is the first person over the age of eighteen, other than the defendant, to whom the child spoke about the offense. *See id*. § 2(a)(3). The statement must be "'more than words which give a general allusion that something in the area of child abuse is going on'; it must be made in some discernable manner and is event-specific rather than person-specific." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011)

(quoting *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)). "Hearsay testimony from more than one outcry witness may be admissible under article 38.072 only if the witnesses testify about different events." *Id.* There may be only one outcry witness per event." *Id.*

## B. Error Analysis

Prior to admitting forensic interviewer Odhiambo's testimony regarding Theresa's statement to her, the trial court conducted a hearing pursuant to article 38.072 to determine the proper outcry witness. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2(b)(2) (requiring trial court to conduct hearing outside presence of jury and find statement is reliable based on time, content, and circumstances of statement prior to its admission). During that hearing, Theresa testified that she told Oshaa that appellant had "been touching on [her] and stuff." She testified that she did not tell him that appellant had touched her vagina with his penis. When the trial judge asked Theresa if she told her brother something different than what she told Odhiambo, Theresa replied "No, I just told him that he had been touching me inappropriately; but I told the lady, like, from the beginning to, like, the very end of it happened." When the trial judge asked Theresa if she was more specific with Odhiambo than she was with her brother about what had happened, she replied "Yes, sir."

22

Odhiambo testified that Theresa disclosed multiple instances of sexual abuse including instances when the appellant "touched her on the butt and her breast on top of her clothes" and "touched [her] on her butt and [vagina] with [his penis]." Odhiambo testified that Theresa told her that she had disclosed to her brother that "she had been touched," but not with the detail with which she had disclosed the sexual abuse to Odhiambo. Following Theresa and Odhiambo's testimony, the trial court designated Odhiambo as the outcry witness for the charged offense and found that Theresa's hearsay statement was reliable.

The trial court later conducted another article 38.072 hearing following the testimony of Odhiambo, Theresa, Renee, Rachel, Denise, and Lisa to determine if Oshaa was also an outcry witness. During that hearing, Oshaa testified that Theresa told him that appellant came into her room late at night on more than one occasion and "touch[ed] her on her private parts." Trial counsel objected to admission of this hearsay statement, arguing that it was not a true outcry statement because Oshaa initiated the conversation with Theresa and the statement did not meet the requirements of article 38.072. The trial court overruled the objections and designated Oshaa as "an outcry witness with regard to the statements that [Theresa] gave to him that was a result of an independent, distinct event of sexual abuse of a child that [appellant was] not on trial for in this specific case."

In the presence of the jury, Oshaa testified that Theresa initially denied that appellant had tried to touch her. After Oshaa told her that she would not get in trouble, Theresa told him that appellant "used to come into her room late night and touch her private parts and stuff like that." Oshaa also testified that Theresa told him that appellant "made her touch his private part and stuff like that."

Appellant contends—and the State acknowledges—that the trial court erred in permitting Oshaa to testify about Theresa's statement to him because there is nothing in the record to support a finding that the events Theresa described to Oshaa are different than the events she disclosed to Odhiambo, particularly in light of Theresa's article 38.072 testimony that she told Odhiambo about appellant's abuse of her "from the beginning . . . to the very end" and that she did not tell Oshaa anything different than what she told Odhiambo. Having found error, we must determine whether the error requires reversal.

### C. Harm Analysis

As previously noted, the erroneous admission of evidence is reviewed under the standard for non-constitutional harm and requires reversal only if it affects the substantial rights of the accused. *See* TEX. R. APP. P. 44.2(b); *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Petriciolet*, 442 S.W.3d at 653. "We will not overturn a criminal

24

conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury or had but a slight effect." *Id*. at 654.

Initially, we note that the improper admission of outcry testimony is harmless when similar testimony is admitted through the unobjected-to testimony of the victim. *See Leday*, 983 S.W.2d at 718; *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). In his brief, appellant acknowledges that Odhiambo and Oshaa testified to the "exact same thing" and "the same events." Further, the record reflects that Theresa and Rachel testified to the same fact that Oshaa related to the jury, that is, that appellant came into Theresa's room and touched her. Thus, to the extent that appellant complains about Oshaa's testimony regarding Theresa's statement to him, this evidence was cumulative of other unobjected-to testimony that came before the jury and, therefore, was harmless. *See Leday*, 983 S.W.2d at 718; *Duncan*, 95 S.W.3d at 672; *see also McLemore v. State*, No. 02-15-00229-CR, 2016 WL 4395778, at *9 (Tex. App.—Fort Worth Aug. 18, 2016, pet. ref'd) (mem. op. not designated for publication) (noting defendant conceded that testimony of outcry witnesses was cumulative where he admitted witnesses' testimony overlapped).

Appellant also argues that when Oshaa was allowed to testify as an outcry witness, "it opened the door to his whole discussion about why he questioned the

girls in the first place and to all of the 'red flags' that supposedly went to his state of mind." He contends that Oshaa's testimony that the red flags led him to ask his sisters about appellant—namely, his godsisters' statement that appellant was "weird" and "watche[d] them," appellant's statement that he was a sex offender and that a thirteen-year old girl "had lied on him," and his fifteen-year old girlfriend's statement that appellant had "tried to hit on her"—was so damaging that it affected his substantial right to a fair trial.

However, the evidence supporting the verdict was strong. *See Petriciolet*, 442 S.W.3d at 654 (noting courts may consider strength of evidence of defendant's guilt as factor in harm analysis). The jury heard Theresa's testimony that (1) within a year after appellant moved into the house, he touched her breast and vagina with his hands and, afterwards, he fondled her in his bedroom twice a week; (2) on one occasion, appellant called Theresa into his bedroom, told her to take off her clothes, and penetrated her vagina with his penis and ejaculated on the bed; (3) appellant continued to have sexual intercourse with Theresa twice a week until she began menstruating; and (4) appellant went into Theresa's bedroom at night and touched her breast. The jury also heard testimony from Rachel who witnessed appellant touch Theresa's breast while she was asleep.

We also consider the impact of the complained-of testimony in connection with other evidence in the case. *See Barshaw*, 342 S.W.3d at 94. Given the above

26

testimony, as well as Odhiambo's testimony regarding Theresa's detailed disclosure to her of multiple instances of abuse and the testimony of the other extraneous victims that was already before the jury, the impact of Oshaa's testimony regarding his godsisters' and girlfriend's statements is diminished when placed in the context of a trial filled with other highly detailed and emotionally charged evidence. *See Prible v. State*, 175 S.W.3d 724, 737 (Tex. Crim. App. 2005) (finding trial court's admission of children's autopsy photographs erroneous, but harmless, where photographs were not particularly gruesome or emotionally charged and paled in comparison to properly admitted post-mortem photographs of parents with whose deaths appellant was charged); *Walter v. State*, 293 S.W.3d 886, 891 (Tex. App.— Texarkana 2009, pet. ref'd) (concluding that error in admitting codefendant's blame-shifting hearsay testimony containing statements about victims unsuccessfully pleading for their lives was harmless error where conviction was supported by other, properly admitted, emotionally charged evidence). With regard to the remaining "red flag"—Oshaa's testimony that appellant admitted that he was a sex offender and that a thirteen-year old girl "had lied on him"—we note that evidence of appellant's prior conviction for sexual assault of a child was already before the jury. *See Leday*, 983 S.W.3d at 718.

We may also consider the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments and even voir dire, if material

to appellant's claim. *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). Here, the record reflects that the trial court instructed the jury that they were not to consider Oshaa's testimony regarding his godsisters' and girlfriend's statements to him for the truth of the matter asserted, but rather only for the effect that the statements had upon him. *See id.*

Oshaa's testimony regarding the red flags that prompted him to talk to his sisters about appellant were also particularly relevant in rebutting appellant's defensive theory that Oshaa had influenced his siblings and step-siblings to fabricate allegations against appellant. Deputy Butler testified that, during her interview of appellant, he claimed that Theresa was lying about the allegations against him and that she and Oshaa were scheming against him. Through his cross-examination of Theresa, Renee, Rachel, Lisa, and Denise—who all testified before Oshaa—trial counsel sought to develop the defensive theory that Oshaa convinced Theresa to fabricate the allegations against him because he was a troublemaker who resented appellant's attempts to discipline him and wanted him out of the house. Trial counsel also elicited similar testimony from appellant's sister and mother. Thus, Oshaa's testimony regarding the red flags that led him to talk to Theresa allowed the State to rebut appellant's defensive theory. *See id.*

A review of the record reveals that the State did not emphasize this portion of Oshaa's testimony at trial. Aside from one reference to Oshaa's knowledge that appellant is a sex offender, the State made no mention of the evidence. *See id.*

After examining the record as a whole, we have fair assurance that the admission of Oshaa's outcry testimony, although erroneous, did not influence the jury, or had but a slight effect. Accordingly, the error in the admission of this evidence does not constitute reversible error. *See Motilla*, 78 S.W.3d at 355. We overrule appellant's third issue.

## Admission of Jail Disciplinary Records

In his fourth issue, appellant contends that the trial court abused its discretion by allowing the State to introduce his jail disciplinary records during the guilt-innocence phase of the trial.

During the cross-examination of appellant, the following exchange occurred:

State: Have you ever masturbated in front of anyone?

Appellant: No.

State: You tried to strip—

Appellant: Let me rephrase that.

State: Okay.

Appellant: In jail I have, in jail.

Trial counsel objected on the grounds of improper impeachment because appellant admitted that he had masturbated in front of someone at the jail, and he also objected under Texas Rule of Evidence 403 that the probative value of the evidence was outweighed by its prejudicial value. The trial court overruled the objections. The cross-examination continued:

> State: In fact, you've been written up for masturbating in jail twice, correct?
>
> Appellant: I was standing at the toilet.
>
> State: I'm not asking you about details, sir. I'm asking you—
>
> Appellant: Yes, yes, yes, ma'am, I was.
>
> State: At one point, you stared down a female officer, right?
>
> Appellant: I don't recall that.

The State later sought to introduce evidence from appellant's jail disciplinary records. Trial counsel objected to their admission under Code of Criminal Procedure article 38.37 and evidentiary rules 403 and 404. Following a bench conference, the trial court allowed the State to introduce the jail disciplinary records into evidence. Trial counsel re-urged the same objections. The trial court overruled the objections and admitted the records. The records reflect two incidents in which appellant masturbated in front of females in the jail while looking at them. The first incident involved a nurse and the second incident involved a jailer.

Appellant contends that the disciplinary records were not relevant as impeachment evidence because he admitted on the stand that he had been written up twice for masturbating in jail and, therefore, there was nothing to impeach. He also argues that trial counsel's objection under Rule of Evidence 403 should have been sustained.

## A. Applicable Law

Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010). "The term 'probative value' refers to the inherent probative force of an item of evidence— that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence." *Id.* (quoting *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)). "'Unfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* "It is only when there exists a clear disparity between the degree of prejudice of the offered evidence

and its probative value that Rule 403 is applicable." *Id.* (quoting *Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997)).

In conducting a Rule 403 analysis, a trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

## B. Analysis

Assuming that the admission of the jail disciplinary records constituted error, the record does not demonstrate that appellant was harmed by the evidence.[5] *See Motilla*, 78 S.W.3d at 355; *Morales*, 32 S.W.3d at 867. The evidence established that appellant had been charged with the disciplinary offense of "engaging in sexual acts" twice for masturbating in the jail. The record reflects that, despite trial counsel's initial objection to appellant's admission to masturbating in jail, appellant

---

[5] The State agrees with appellant that the trial court erred in admitting his jail disciplinary records.

admitted, without objection, that he had been written up twice for that offense. "Error in the admission of evidence may be rendered harmless when substantially the same evidence is admitted elsewhere without objection." *See Washington*, 485 S.W.3d at 638–39 (citing *Leday*, 983 S.W.3d 717–18).

As summarized above, the evidence supporting the verdict was strong. Appellant acknowledges this point, albeit implicitly, when he asserts that the State did not need this evidence, and that its introduction was simply "an instance of 'piling on'" in light of the evidence, already before the jury, of appellant's prior conviction for sexual assault of a child and the testimony of the three extraneous victims regarding other instances of sexual abuse by appellant. *See Motilla*, 78 S.W.3d at 355.

The record reflects that the State briefly mentioned appellant's jail disciplinary records in its closing arguments. The prosecutor told the jury that she offered the disciplinary records not for the purpose of "throw[ing] in the kitchen sink," but to show that appellant was lying on the stand about whether or not he would be capable of committing these sexual offenses. However, the record also reflects that the records were not published or shown to the jury.

Finally, the record shows that the trial court's charge instructed the jury that it could only consider evidence that the defendant had committed "an alleged offense or offenses other than the offense alleged against him in the indictment in this case

33

… in determining the motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident of the defendant, if any, in connection with the offense, if any, alleged against him in the indictment and for no other purpose." Thus, the jury was instructed that it was not to consider the records for any other purpose, including character conformity and impeachment. *See id.*

Viewing the entire record, including the strong evidence of appellant's guilt, the unobjected-to cumulative evidence, and the trial court's instruction to the jury, we have fair assurance that the admission of the jail disciplinary records, although error, did not influence the jury, or had but a slight effect. *Barshaw*, 342 S.W.3d at 93. Accordingly, appellant's fourth point of error is overruled.[6]

## Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

---

[6] In the final paragraph under his fourth point of error, appellant states that "[t]he error [in allowing introduction of the jail disciplinary records] undoubtedly had a substantial and injurious effect on the jury's verdict (if not singularly, certainly in its cumulative affect [sic])." To the extent that appellant is alleging cumulative error or harm, we need not decide this issue because appellant's conclusory statement is insufficient to maintain his burden to adequately brief the point of error. *See* TEX. R. APP. P. 38.1(i); *Linney v. State*, 401 S.W.3d 764, 782–83 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (finding issue inadequately briefed because defendant made only conclusory statement that cumulative harm affected his substantial rights).

Panel consists of Justices Lloyd, Kelly, and Hightower.

Do not publish.   TEX. R. APP. P. 47.2(b).